IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

RANDY J. WILLIAMS, )
 )
         Plaintiff, )
 )
v. )   Case No.: 13-CV-575-JHP-FHM
 )
GREAT DANE LIMITED PARTNERSHIP, )
 )
         Defendant. )

## OPINION AND ORDER

Now before the Court are the motion for summary judgment filed by the Plaintiff Randy Williams (Dkt#33) and the motion for summary judgment filed by Defendant Great Dane Limited Partnership (Dkt#34). Both parties have submitted evidentiary materials that include sworn deposition testimony and documentary evidence, the admissibility of which neither party genuinely disputes. More particularly, the Court finds that the facts recounted in this opinion, all of which appear in the summary judgment record, are not genuinely disputed and therefore support the entry of judgment as matter of law, in accordance with Fed.R.Civ.P. 56.

Plaintiff contends the dispositive issue in this civil action is whether Defendant could unilaterally change Plaintiff's compensation agreement and reduce his commissions by more than half on two specific transactions after Plaintiff had performed by securing purchase orders.[1] Defendant contends the dispositive issue is whether Plaintiff should be deemed to have agreed to

---

[1] The change imposed by Defendant reduced commissions from $100 per trailer to $50 per trailer and added an annual quota of 400 trailers. The reduced, $50 commission rate resulted in a net loss to Williams of $260,000.00. Imposition of the quota resulted in a net loss of an additional $20,000.00. Accordingly, the amount in wages and/or contract damages at issue is $280,000.00.

1

Defendant's unilateral decision to reduce commissions by continuing his employment and receiving the reduced commissions.

## Background

Plaintiff (hereafter "Plaintiff" or "Williams") was employed by Defendant (hereafter, "Defendant" or "Great Dane") in a sales position from 1984 until June 2013. Great Dane is in the business of manufacturing platform trailers, dry freight vans, and refrigerated vans for customers in the industry. During the relevant timeframe, Plaintiff's compensation included a salary component and commissions based on sales of trailers on which he was the commissioned salesman, or in which he assisted. In 2007, Defendant's Executive Vice President, Jim Pines, entered into an oral agreement with Plaintiff, under which Plaintiff was to receive commissions of $100 per trailer (the "Pines Agreement"). Plaintiff's commission rights were not subject to any quota under the Pines Agreement.

In the spring of 2011, Plaintiff was assigned to the XtraLease account and was asked to assist in obtaining that business for Great Dane. On December 6, 2011, XtraLease executed a sales agreement with Defendant, whereby XtraLease contracted to purchase 4000 trailers with an option to purchase an additional 2,000. On that same date, Plaintiff's performance on this sale was recognized by Great Dane management in multiple congratulatory emails. On December 17, 2011 Plaintiff secured a purchase order with John Christner Trucking ("JCT") for 300 trailers. Each of these contracts contains a provision that precludes the customer from cancelling the transaction. On the dates that the JCT and XtraLease contracts were executed, Plaintiff's employment contract provided for a $100 per trailer commission, not subject to any quota.

Once the JCT and XtraLease contracts were signed, what remained was for Great Dane to manufacture the trailers, deliver same, and receive payment. To the extent these events remained

to occur, they were in the control of Great Dane and others besides Plaintiff. As Plaintiff testified, his sales job was done when he got the purchase order. The parties agree that Plaintiff was to be paid only after Great Dane received payment from the customer. It is uncontested that Great Dane received full payment for the 5200 trailers sold to JCT and XtraLease pursuant to the 2011 purchase orders, while Plaintiff was still employed at Great Dane.

Shortly after the XtraLease and JCT contracts were signed, Plaintiff's boss, Dean Engelage, and Great Dane's Jim Petrarca began discussing a revision to Williams' compensation. On December 20, 2011, Engelage and Petrarca exchanged emails that estimated Williams' compensation in 2012 under the Pines Agreement to be "nearly $800,000." The emails compare that figure with a lower estimate based on reducing Williams' commission to $50 per trailer and imposing a 400-trailer annual sales quota; this lower estimate put Williams' 2012 compensation at $416,000.

On December 22, 2011, Engelage informed Plaintiff in a phone conversation that, beginning January 1, 2012, Plaintiff's commission would be reduced to $50 per trailer, he would be subject to a 400-trailer quota, and his annual salary would be increased by approximately $4000. Plaintiff testified in his deposition that he was told this change would apply only to new sales going forward in 2012. As of December 22, 2011, Plaintiff also had been working on various other transactions, beyond JCT and XtraLease, but had not yet secured purchase orders. Because he felt the change would be "not right" if applied to deals he was close to finalizing, he objected to Engelage. The parties agree that this conversation did not address how any change to Plaintiff's compensation plan would apply to deals where a purchase order had been signed in 2011. Engelage testified that he made the decision to reduce Plaintiff's compensation before December 22, 2011, when he spoke to Plaintiff, and that it was not a negotiated change.

Defendant never provided any writing to Plaintiff that set forth a new, modified compensation agreement. According to Engelage, the new agreement was not documented due to the human resources department's oversight. Defendant provided Plaintiff no writing that set forth how this new arrangement was to apply to deals like XtraLease and JCT that were evidenced by customer purchase orders signed in 2011.

In approximately May 2012, Plaintiff began receiving commissions for XtraLease and/or JCT sales from the 2011 purchase orders. Those commissions were based on a commission of $50 per trailer and the 400-trailer quota. Over the next eight months into early 2013, the JCT and XtraLease trailers were manufactured, Defendant received payments, and Plaintiff was paid his commissions at the reduced rate.

During the relevant time period, Defendant had no written policy regarding commissions. Plaintiff testified that he understood that he earned his commissions when he sold trailers, and that the deal was "sold" when the customer signed a binding purchase order or contract. Plaintiff concedes, nonetheless, that payment of his commission was not due until Defendant received full payment by the customer. Great Dane's Mr. Engelage, who testified as Defendant's 30(b)(6) representative, testified that Plaintiff did not earn a commission until Defendant paid the commission.

In the spring of 2013, Defendant and Plaintiff began discussions regarding Plaintiff's future with Great Dane. As a result of those discussions, Plaintiff through his counsel sent Defendant a letter dated June 18, 2013. That letter included the following demand:

> Mr. Williams secured signed purchase orders from XTRA Lease and John Christner Trucking in 2011, when his commission was $100/trailer. After Mr. Williams had secured the signed purchase orders, Great Dane unilaterally reneged on its long-standing commission agreement with Mr. Williams (and denied him what he had already earned under that agreement) and, instead, reduced his commission to $50/trailer. Upon sale of 5200 trailers under these purchase

> orders, Mr. Williams was paid approximately $260,000.00 in commissions, instead of the $520,000.00 he earned. He requires payment of his damages caused by Great Dane's breach of contract – $260,000.00 plus accrued interest.

The June 18, 2013 letter outlined, in some detail, the basis of Plaintiff's claim for commissions. The letter was sent that date via email and regular mail to Ron Pitrelli, Defendant's Vice President, Human Resources. Defendant does not dispute that it received the letter, and Defendant's counsel responded via letter dated June 25, 2013. That response did not specifically address the demand for commissions, but instead stated that "the numerous demands in your letter are rejected." Plaintiff was then notified by Defendant of his termination effective June 26, 2013.

**Plaintiff's breach of contract claim.**

When Plaintiff began his work to secure the JCT and XtraLease deals, he was working under the Pines Agreement. He performed his sales role under an option contract – the Pines Agreement – and he accepted Defendant's $100 per trailer, no quota offer when he began work on those two transactions. Those were the terms binding both parties when he secured the JCT and the XtraLease contracts. Under established contract law, Defendant could not revoke the offer that Plaintiff accepted by beginning performance.

Where an employer invites its employee to accept an offer through rendering of performance, an option contract is created when that employee begins the invited performance. RESTATEMENT (SECOND) OF CONTRACTS § 45(1) (ALI 1981) (hereinafter cited as "Restatement"). The effect of an option contract is to limit the power of the offeror to revoke the offer. *Id* at *§ 25, comment d*. Where the offer invites performance, the beginning of performance by the offeree creates an option contract and renders the offer irrevocable. Restatement, *at § 62, comment b;* Restatement *§ 45, Illustration 8*.

Oklahoma follows the Restatement § 45 and authorities applying the rules stated there. In *Dangott v. ASG Industries, Inc.*, 1976 OK 131, 558 P.2d 379,, the Oklahoma Supreme Court invoked the "ordinary rules of construction" set forth in Restatement §45 in interpreting the employment contract at issue. The court relied also on Corbin on Contracts, § 153 (1950) quoting that leading treatise as follows:

> The employer's offered promise becomes irrevocable by him as soon as the employee has rendered any substantial service in the process of accepting; and this is true in spite of the fact that the employee may be privileged to quit the service at any time.

*Dangott*, 558 P.2d at 382-83 (emphasis added).

From the sales standpoint, the JCT and XtraLease deals were complete, and the commissions earned, when the binding contracts, i.e., the irrevocable customer purchase orders, were signed. At that point, Plaintiff was simply waiting to be paid commissions already earned and the only condition on those commissions was that the customers pay Great Dane. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement, § 224. In this case, it is an admitted fact that this condition was met with respect to JCT and XtraLease.

Plaintiff testified to his understanding that he earned commissions when the customer signed a binding contract. Defendant does not genuinely dispute Plaintiff's understanding. Rather, it argues that Plaintiff's understanding is "not a material fact" because Defendant does not pay the commissions until after the customer pays. Plaintiff's understanding is relevant, however, because it is pertinent to the terms of the Pines Agreement – it is half of the *mutual* understanding that, the summary judgment evidence demonstrates, the contracting parties shared. Under the Pines Agreement, Plaintiff was to be paid $100 per trailer "on trailer sales that he initiated or in which he participated." Defendant does not dispute this material fact, but instead

argues that the Pines Agreement somehow does not apply to JCT and XtraLease.[2] As it relates to trailer sales, Plaintiff understood the term "sold" meant securing a purchase order, and in his sales training role for Defendant he taught other sales personnel that the sale was complete when the purchase order was executed. More importantly, Great Dane's Mr. Engelage also understood the term "sold" to mean that a purchase order had been secured.[3] An email from Great Dane's Dave Gilliland confirms that Defendant distinguished the time when a trailer was "sold" from the time when the trailer was eventually manufactured and delivered.[4] Based on this record, it is undisputed that a trailer was "sold" under the Pines Agreement when the customer executed a purchase order. As such, Plaintiff earned, and was entitled to be paid, $100 per trailer on the JCT and XtraLease transactions, with no quota.

Defendant argues that the parties modified the Pines Agreement. But Defendant proffers no written evidence that Plaintiff agreed to a reduced commission on JCT and XtraLease or that those commissions would be subject to a quota. As Plaintiff aptly notes, it would be irrational for a seasoned salesman to willingly trade $280,000 in commissions for a $4000 salary increase. Defendant has submitted no evidence in response to Plaintiff's motion or in support of its own motion for summary judgment that would even tend to explain such a counterintuitive decision – a decision that Plaintiff was under no obligation to make.

---

[2] The Pines Agreement was made between Mr. Williams and Mr. Pines, on behalf of Defendant. Defendant has proffered no affidavit from Mr. Pines nor any other admissible evidence to controvert Plaintiff's testimony regarding the terms of the Pines Agreement.

[3] Mr. Engelage testified that sales personnel understand the term "sold" to mean "he got an order that they're confident it's going to ship." The congratulatory emails sent to Plaintiff and others belie any argument that Williams and Defendant were anything other than confident that XtraLease was "going to ship."

[4] *See* Plaintiff's Ex. 10 to his Motion for Summary Judgment, Dkt No. 33-10 at p. 1. When shown that exhibit, Mr. Engelage acknowledged, for a second time, Defendant's own distinction between when a trailer is "sold" and when it is eventually invoiced.

Defendant seems to predicate its defense chiefly upon Plaintiff's status as an at-will employee. The Court first notes that Defendant has proffered no evidence showing that Plaintiff was an at-will employee. But even assuming that Plaintiff was an at-will employee, that status has no effect upon the proper disposition of Plaintiff's claims in this case. Defendant employed Plaintiff for the entire relevant period, from negotiation of the JCT and XtraLease deals, through signing of the contracts, and through the period of full payment by the customers. Defendant paid commissions on these transactions, but the payments were at the reduced rate of $50 per trailer and subject to the quota. As such, the issue often faced by courts – one involving a termination to avoid payment of any commission – is not presented here.

Defendant argues that, by remaining employed, Plaintiff accepted the unilaterally-imposed new terms. Defendant relies on *Robinson v. Phillips Petroleum Co.,* 54 P.2d 322 (Okla. 1936). The plaintiff there was a gas station manager paid a commission of four cents per gallon sold. The employer told its employee that it would be reducing his per gallon commission component. The employee continued his employment and subsequently sued the employer, arguing that he never accepted the reduced commission rate. *Robinson* is distinguishable from the instant case, because Robinson did not sue for commissions he earned before the employer reduced his commission rate. The *Robinson* plaintiff argued that the employer could not reduce commissions *going forward* unless he agreed to it. The court there understandably held that, by remaining employed after notice of the change, the plaintiff accepted those terms for gas he sold after the notice.

Plaintiff Williams does not contend that Defendant could not change his commission rate going forward on transactions for which he had not already obtained a purchase order. And Plaintiff has not sued Defendant seeking to enforce the Pines Agreement on deals consummated

with 2012 purchase orders. The plaintiff in *Hardin v. First Cash Fin. Serv., Inc.*, 465 F.3d 470 (10th Cir. 2006), also cited by Defendant, had no option contract and had no claim for earned commissions. Unlike Williams, the *Hardin* plaintiff argued that a new agreement could not be enforced *prospectively* after she objected. Neither *Robinson* nor *Hardin* control based on the instant facts. Williams accepted the new commission terms only on 2012 transactions for which he had not already earned his commission. But that modification cannot be retroactively applied to the JCT and XtraLease commissions.

An employer may not retroactively make changes to an employee's compensation, regardless of his at-will status. In *Malone v. American Business Information, Inc.*, 647 N.W.2d 569 (Neb. 2002), two salesmen sued their employer for retroactively applying a change in commission structure. The Court addressed the at-will nature of the employment, but distinguished its application as follows:

> However, even if there is an at-will employment relationship, the employer cannot unilaterally alter the amount of compensation for work that has already been rendered or for commissions that have already accrued. See Am.Jur.2d *Employment Relationship* § 54 (1996). Simply put, *an employer cannot modify a written commission agreement retroactively* or without notice to its employees.

Id., at 575 (emphasis added). The same principle applies to an oral commission agreement like the Pines Agreement.

Similarly, in *Baker v. Internap Network Services Corp.*, 2010 WL 3834003 (N.D. Ill.), the District Court addressed the issue in this way:

> Internap has cited no authority, however, that stands for the proposition that it can make such a modification retroactively, and Illinois cases suggest that such changes to compensation terms cannot be applied to commissions already earned.
> * * *
> Unlike an employer's decision to change a compensation structure going forward, a retroactive adjustment to the compensation schedule, without prior notice to the employee, does not bear the hallmarks of an offer as that term is used in contract law.

9

*Id*., at *4. The Court finds the reasoning of the above-cited cases persuasive as applied to the facts here. Plaintiff performed his part of the bargain by securing the executed JCT and XtraLease contracts while the Pines Agreement was in effect. He earned his commissions under the Pines Agreement prior to any unilateral change to his employment agreement. Defendant may not retroactively and unilaterally impose such a change to reduce those commissions.

Accepting Defendant's argument as to when the commissions were earned would result in a troubling result that, in this Court's judgment, would make all employer promises to employees illusory. Mr. Engelage testified, as Defendant's representative, that Plaintiff "earns the commission when we pay the commission" and that "[H]e earns it when he gets paid." Based on Defendant's reasoning, a commission salesman may perform fully, yet at any point before his employer chooses to pay the commission, that employer could reduce or eliminate that commission at its sole discretion and with impunity. The employer may take such actions, Great Dane argues, entirely because Plaintiff was allegedly an at-will employee. The Court will not adopt a principle that renders all promises to at-will employees illusory. Indeed the Oklahoma law cited in this opinion makes clear that Defendant's argument is contrary to existing law.

Defendant argues that Plaintiff accepted the reduced commissions and did not complain. The Court finds that Plaintiff's actions after the December 22, 2011 phone call were reasonable under the circumstances. More importantly, as a matter of law, such actions did not impair the claims that Plaintiff asserts in this case. Plaintiff objected to the change, but he remained employed with Great Dane and worked to close new deals and obtain new business. He received the half-commissions on JCT and XtraLease, which is consistent with his right to continue his contract and sue for partial breach. *See Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1374 (5th Cir. 2005). The Restatement (Second) Contract, §236 provides as follows:

> [I]f the injured party elects to or is required to *await the balance of the other party's performance* under the contract, his claim is said instead to be one for damages for partial breach.

*Id*. at Comment b (emphasis added). Having secured the JCT and XtraLease purchase orders under the terms of the Pines Agreement, it is reasonable that Plaintiff took the necessary actions to remain employed – even if it meant remaining silent – and to accept the partial commission payments.[5] Defendant put Plaintiff in this Hobson's-choice[6] position, after he earned his commissions and Defendant received the full benefits of Plaintiff's work. For these reasons, the Court finds no merit in Defendant's argument that, by remaining employed and not protesting, Plaintiff agreed to Defendant's "modification."

Accordingly, the Court grants summary judgment in regard to Plaintiff's claim for breach of contract.

**Plaintiff's statutory wage claim.**

Plaintiff also seeks to recover wages under Oklahoma's Protection of Labor Act, 40 O.S. § 165.1 *et seq*. Section 165.3(A) provides that an Oklahoma employer must pay all wages owed to an employee by the next regular pay period following termination of employment. 40 O.S. § 165.1(4) defines wages to include commissions which are "earned and due, or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation." As an initial matter, there is no dispute that commissions became earned and due. Defendant paid commissions, albeit at the reduced rate, to Plaintiff after JCT and XtraLease paid their respective invoices. By accepting a partial payment, however, Plaintiff did not release his claim to the entire wage. The applicable statute,

---

[5] Defendant has proffered no evidence that it suffered any detriment in reliance on Plaintiff's acceptance of the half commissions.

[6] Hobson's Choice: A situation in which you are supposed to make a choice but do not have a real choice because there is only one thing you can do or have. Merriam-Webster's Dictionary, 2011.

40 O.S. § 165.4(B), provides that "[A]cceptance by the employee of any payment made under this section shall not constitute a release as to the balance of the wage claim."[7]

For the same reason that the Court has concluded that Plaintiff earned the JCT and XtraLease commissions under the terms of the Pines Agreement, the Court finds that Plaintiff earned the unpaid wages he seeks under the Protection of Labor Act. Oklahoma administrative law opinions further support the conclusion that the employer cannot change the rules once the employee has performed the work. *See Design IV Carpet and Tile, Inc. v. Susan Bryan*, 2002-50362 (2002) (an employer cannot unilaterally change an employee's wage after the work has been done simply because the employee is at-will). Accordingly, the Court grants Plaintiff summary judgment on his wage claim.

The Court also finds that summary judgment on the wage claim is mandated for an independent reason. Defendant had no written policy that relates to commissions, and it had no written agreement with Defendant that related to commissions. More specifically, Defendant has proffered no writing – in contract or policy form – that put Plaintiff on notice that, after he had secured a signed customer contract, it could change the commission agreement under which Plaintiff operated to secure that customer order. Defendant nonetheless argues that it could reduce Plaintiff's commission at any time in its discretion, regardless of Plaintiff's performance. Applicable Oklahoma labor regulations, at OAC 380:30-1-8, address this issue.

OAC 380:30-1-8(a) provides that regular wages are those received for services rendered in the regular course and scope of employment. It further provides that such wages may not be conditioned on job performance. Although Plaintiff may have earned commissions with some

---

[7] The Protection of Labor Act includes various provisions precluding waiver of an employee's rights. 40 O.S. § 165.5 prohibits private agreements that contravene any provisions of the Oklahoma Protection of Labor Act. 40 O.S. § 165.2 prohibits waiver of any of the employee's statutory rights because of any contract to the contrary.

12

regularity, it is apparent his commissions were "conditioned on job performance." Plaintiff's base salary was not conditioned on job performance, but his commissions were calculated and paid only if he succeeded in obtaining sales. The regulation, at OAC 380:30-1-8(d), defines benefits as "special wages that are paid at certain times under certain conditions, according to the terms of the employment agreement. These include vacation, sick pay, paid holidays, severances, bonuses, *and other similar advantages*" (emphasis added). The parties cite no specific Oklahoma authority addressing the question of whether commissions are benefits or regular wages. In interpreting this regulation, the Court concludes that Plaintiff's commissions were conditioned on his job performance; that they were to be paid at certain times and under certain conditions in accordance with the Pines Agreement; and that these commissions are contemplated as benefits by the "other similar advantages" language of the regulation. Therefore, the Court determines that Plaintiff's commissions should be treated as benefits under the applicable wage law.

OAC 380:30-1-8(d) provides that the employee is entitled to benefits "upon proof of an established policy, or pursuant to the terms of a written agreement." Here, Plaintiff established that he was paid $100 per trailer with no quota since 2007, pursuant to the Pines Agreement. Subsection (e) provides that "[A]ny restrictions, criteria or conditions on benefits, including employer discretion and any limits thereon, must be contained in a written policy signed by the employee or they will not be valid." That subsection further provides that once the employee meets the criteria for earning such wage, "the benefit becomes part of wages earned and due and is thereupon payable as provided by statute in 40 O.S. § 165.1 et seq."

Defendant had no written policy that conferred upon it the discretion to unilaterally or retroactively reduce Plaintiff's commissions. Defendant received no writing from Plaintiff

acknowledging that Defendant had reserved such discretion. As such, the putative discretion that Defendant sought to employ, to reduce Plaintiff's commissions, is not valid or effective under the applicable regulation. Plaintiff's commissions were earned and due under the Pines Agreement but never fully paid by Defendant. On this additional basis, the Court grants Plaintiff's motion for summary judgment on the statutory wage claim.

**Plaintiff's claim for liquidated damages.**

The Protection of Labor Act provides that, where an employer does not pay wages due following a termination of employment, the employee shall be entitled to recover – in addition to his unpaid wages – liquidated damages, unless the employer can establish that a bona fide disagreement exists that justified withholding the claimed wages. Under 40 O.S. § 165.3(B), liquidated damages equal "the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller." In this case, the amount at issue in liquidated damages is the withheld wages – $280,000.00.

Plaintiff is not entitled to liquidated damages if Defendant can demonstrate it withheld the disputed wages due to a bona fide disagreement. If the employee provides the notice set forth in 40 O.S. § 165.4(A)(2), Defendant must comply with the remainder of that statute. The statute contemplates that the employee will file an administrative wage claim or otherwise serve the employer with a demand via certified mail. If that notice is provided, then within fifteen days of receipt the employer must respond with a "written explanation of the relevant facts and/or evidence which supports the belief of the employer that the wages in dispute are not owed."

In the instant case, Plaintiff did not provide his demand by certified mail; however, he provided that demand by mail and email, and Defendant received that demand. Plaintiff's June 18, 2013 letter outlined, in much detail, the basis of Plaintiff's claim for commissions. The letter went to Defendant's Vice President Human Resources, and Defendant does not dispute that it received the letter. In its June 25, 2013 response, Defendant's counsel acknowledged Plaintiff's demand and simply stated that "the numerous demands in your letter are rejected." In sum, Plaintiff substantially complied with the statute, and Defendant's response provided no explanation of the relevant facts that supported its belief that the commissions were not owed. On August 22, 2013, more than two months after Plaintiff's demand, Defendant mailed a letter to Plaintiff attempting to preserve the bona fide defense. That attempt was untimely. As such, Defendant has failed to preserve the bona fide disagreement defense contemplated by 40 O.S. § 165.4.

The notice contemplated by 40 O.S. § 165.4(A)(2) is not a required prerequisite to an employee's right to liquidated damages. Where an employee pursues his wages directly through litigation, and has not made the demand per § 165.4(A)(2), the employer is excused from any obligation to provide the written explanation set forth in that statute. The employer still retains, however, the burden of proof on its defense of a bona fide disagreement at trial. On the instant facts, the record before the Court establishes, as a matter of law, that Defendant reduced Plaintiff's commissions only after it concluded he would earn too much if it paid him in accordance with the Pines Agreement. The record reveals that Defendant knew that Plaintiff had earned the commissions under the Pines Agreement and had congratulated him accordingly, prior to making its unilateral decision to renege on that agreement. The term "bona fide disagreement" is defined as "an honest and sincere belief or assertion based on a dispute of a

determinative fact or application of law under this title which is supported by relevant evidence." 40 O.S. § 165.1(6). Oklahoma further defines "bona fide" to require good faith. Good faith, in turn, "consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." *Campbell v. Indep. School Dist. No. 01 of Okmulgee Co.*, 77 P.3d 1034, 1041 (Okla. 2003). The record is devoid of any evidence tending to show good faith on Defendant's part. On the contrary, Defendant's actions appear to take advantage of its employee. A manufactured disagreement does not meet the requirement that such disagreement be bona fide. On the record before the Court, no reasonable person could conclude that Defendant has met its burden of establishing a bona fide disagreement. Accordingly, the Court grants summary judgment for Plaintiff on his liquidated damages claim and awards such additional damages in the amount of $280,000.00.

## Conclusion

Plaintiff's motion for summary judgment on his contract claim is granted. Defendant's motion for summary judgment on all claims is denied. The Plaintiff is entitled to recover his contract damages. The Court further grants summary judgment on Plaintiff's wage claim. Plaintiff's damages for breach of contract are equal to his unpaid wages and, accordingly, Plaintiff is entitled to only one recovery on those two claims. Hence Plaintiff is awarded actual damages in the amount of $280,000.00. Plaintiff is further entitled to recover liquidated damages in the additional amount of $280,000.00. Accordingly, Plaintiff is awarded damages against Defendant totaling $560,000.00.

Plaintiff's contract claim seeks to recover for labor or services rendered. Hence he is entitled to recover a reasonable attorneys' fee under 12 O.S. § 936A as the prevailing party.

Plaintiff is also entitled to a reasonable attorneys' fee and costs on his wage claim, pursuant to 40 O.S. § 165.9(B). Plaintiff is ordered to timely file his fee application and bill of costs.

**IT IS SO ORDERED this 7th day of August, 2014.**

_/s/ James H. Payne_
James H. Payne
United States District Judge
Northern District of Oklahoma